UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
INTEMA LIMITED,

                Plaintiff,        **MEMORANDUM OF**
                                                     **DECISION AND ORDER**
                                                     09CV0633(ADS)(ETB)

    -against-

NTD LABORATORIES, INC., and
PERKINELMER, INC.,

                Defendants.
----------------------------------------------------------X
**APPEARANCES:**

**STROOCK & STROOCK & LAVAN**
Attorneys for the Plaintiff
180 Maiden Lane
New York, NY 10038
      By:    Lawrence Rosenthal, Esq.
                Ian G. DiBernardo, Esq., Of Counsel

**ROPES & GRAY, LLP**
Attorneys for the Defendants
1211 Avenue of the Americas
New York, NY 10036
      By:    Bradford James Badke, Esq., Of Counsel

**SPATT, District J.**

       Presently before the Court is the plaintiff's motion to enjoin the defendants from prosecuting a related action proceeding in the District of Massachusetts and the defendants' cross-motion to transfer this matter to the District of Massachusetts for possible consolidation with that action. For the following reasons, the plaintiff's motion is denied and the defendants' motion is

granted.

## I.     BACKGROUND

The plaintiff, Intema Limited ("Intema") is the successor in interest of patent number 6,573,103 ("the '103 patent"), entitled "Antenatal Screening For Down's Syndrome." The '103 patent is directed to a method for determining whether a pregnant woman is at increased risk of having a fetus with Down's Syndrome by analyzing at least one biomarker in each of the first and second trimesters of pregnancy, with at least one of the biomarkers used in each trimester being different from the biomarkers used in the other trimester.

Professor Sir Nicholas J. Wald is the sole named inventor of the '103 patent and is a director of Intema. Both Professor Wald and Intema are residents of England.

Intema has licensed the technology embodied in the '103 patent, including to three large United States providers of testing to the medical profession. From 2001 to 2008, Intema and defendant PerkinElmer, Inc. ("PerkinElmer") engaged in extensive negotiations for a license to the technology covered by the '103 patent. In 2006, PerkinElmer acquired defendant NTD Laboratories, Inc. ("NTD"). PerkinElmer is headquartered in Waltham, Massachusetts and NTD operates a facility in Melville, New York.

Among the PerkinElmer representatives Professor Wald corresponded

with were Yvonne Parker; Ann-Christine Sundell, now the President of PerkinElmer's Genetic Screening Team; and John E. Sherwin, PerkinElmer's Director of Laboratory Operations.

After negotiations failed to produce an agreement, Professor Wald retained the services of Intema's present counsel, Lawrence Rosenthal, Esq., to continue negotiations with PerkinElmer or to otherwise enforce the '103 patent. On September 19, 2008, Mr. Rosenthal sent a letter to Robert Friel, CEO and President of PerkinElmer. The letter states that Mr. Rosenthal is "charged with enforcing the '103 Patent, but [is] prepared to discuss licensing provided an agreement is promptly reached." (Pls. Exh. 1). The letter further provides that "[a] review your promotional material, annexed hereto, reveals features which lead to the conclusion that the Modified Sequential Screening protocol infringes the '103 patent." (Pls. Exh. 1). The letter states that failing consummation of a licensing agreement "we are prepared to vigorously enforce the '103 patent against PerkinElmer and its NTD Laboratories subsidiary and seek damages for past infringement." (Pls. Exh. 1).

Kevin Oliver, Vice President and Chief Intellectual Property Counsel for PerkinElmer, responded to the September 19, 2008 letter with a letter dated September 29, 2008. Mr. Oliver's letter states that PerkinElmer is the owner of certain related patented technologies and had first approached Professor Wald to

discuss the mutual benefits of a cross-licensing agreement.  (Pls. Exh. 2).  Mr. Oliver's letter welcomes an opportunity to finally resolve the matter and invites "a discussion with you of the type described in your letter."  (Pls. Exh. 2).

On October 14, 2008, plaintiff's counsel met with representatives of PerkinElmer, including Mr. Oliver; Chuck Morrison, PerkinElmer's Business Development Director for the Genetic Screening Business Unit; Ms. Sundell; and Pamela Gray, Ph.D. at PerkinElmer's Waltham, Massachusetts offices to discuss the potential licensing of the '103 patent by PerkinElmer and NTD.  On November 7, 2008, plaintiff's counsel sent Messrs. Oliver and Morrison a letter setting forth a proposal to settle the outstanding disputes between the parties.  On December 8, 2008, Mr. Rosenthal received a letter from a letter from Mr. Oliver, rejecting the previous offer and making a counter-offer.

On January 8, 2008, the parties engaged in a telephone conference, during which Mr. Rosenthal advised that PerkinElmer's previous offer was unacceptable and made yet another settlement offer.  According to the plaintiff, Mr. Oliver stated that the proposal required consultation with and approval by PerkinElmer's management and that the process would take about two weeks and that he would contact Mr. Rosenthal with a decision.  Almost one month later, on February 4, 2009, having received no further communication, Mr. Rosenthal left a voice message for Mr. Oliver, reminding him that he owed Mr. Rosenthal a response to

Intema's last settlement offer. On February 5, 2009, Mr. Oliver responded by e-mail, suggesting a telephone call on the afternoon of February 6th.

On the morning of February 6, 2009, Mr. Rosenthal received a call from Dalila Argaez Wendlandt, Esq., counsel for the defendants, advising him that PerkinElmer and NTD had filed an action pursuant to the Declaratory Judgment Act in the United States District Court, District of Massachusetts on February 5, 2009, No. 09CV10176, (the "Massachusetts Action"), alleging invalidity and non-infringement of the '103 patent.

The instant parallel action was filed by Intema on February 13, 2009, alleging that the defendants have directly infringed and/or induced infringement of the '103 patent.

The defendants contend that NTD has pioneered the research and development of prenatal screening protocols for numerous fetal disorders and defects, including Down's Syndrome. The persons responsible for the strategic and day to day management of NTD are Ms. Sundell, who works at PerkinElmer's Finland location; Mr. Sherwin, who is based in Pennsylvania; and John Corbett, PerkinElmer's General Manager of North American Genetic Screening, who is based in Massachusetts. The defendants contend that PerkinElmer's Genetic Screening Business Unit operates throughout the world and that from NTD's Melville, New York facility it performs various types of

Down Syndrome testing. The defendants state that while the Genetic Screening Business Unit has about 1000 employees worldwide, the Melville facility only has 48 employees, who are mostly non-managerial technicians.

Presently before the Court is Intema's motion to enjoin the defendants from prosecuting the Massachusetts Action and the defendants' cross-motion to transfer this matter to the District of Massachusetts for possible consolidation with the Massachusetts Action.

## II.  DISCUSSION

"The unique nature of [Federal Circuit] jurisdiction in patent cases often requires the court to consider whether to apply regional circuit law or Federal Circuit law to particular issues presented." *Lab. Corp. of Am. Holdings v. Chiron Corp.*, 384 F.3d 1326, 1328 (Fed. Cir. 2004). The Federal Circuit has explained that:

> [A] procedural issue that is not itself a substantive patent law issue is nonetheless governed by Federal Circuit law if the issue pertains to patent law, if it bears an essential relationship to matters committed to our exclusive control by statute, or if it clearly implicates the jurisprudential responsibilities of this court in a field within its exclusive jurisdiction.

*Id.* at 1330 (quoting *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999)).

Following this reasoning, the Federal Circuit has expressly stated that "because of the importance of national uniformity in patent cases, we hold that

injunctions arbitrating between co-pending patent declaratory judgment and infringement cases in different district courts are reviewed under the law of the Federal Circuit." *Lab Corp.*, 384 F.3d at 1331.

"The purpose of the Declaratory Judgment Act . . . in patent cases is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights." *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 956 (Fed. Cir. 1987). "The general rule favors the forum of the first-filed action, whether or not it is a declaratory action. Exceptions, however, are not rare, and are made when justice or expediency requires, as in any issue of choice of forum." *Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993); *see also Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008); *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005) ("We apply the general rule favoring the forum of the first-filed case, unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, requires otherwise."(internal quotations and citations omitted)).

The Second Circuit similarly recognizes a preference for the first-filed action, directing that "where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second." *First City Nat. Bank and Trust Co.*

*v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989) (quotations and citations omitted); *see also Taylor v. Rodriguez*, 238 F.3d 188, 197 (2d Cir. 2001); *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989) ("The general rule, and the rule in the Second Circuit, is that as a principle of sound judicial administration, the first suit should have priority, absent special circumstances." (internal quotations and citations omitted)).

"There must . . . be sound reason that would make it unjust or inefficient to continue the first-filed action. Such reason may be the convenience and availability of witnesses, or absence of jurisdiction over all necessary or desirable parties, or the possibility of consolidation with related litigation, or considerations relating to the real party in interest." *Genentech*, 998 F.2d at 938. In addition, "[a] district court may consider a party's intention to preempt another's infringement suit when ruling on the dismissal of a declaratory action, but that consideration is merely one factor in the analysis. *Micron Tech.*, 518 F.3d at 904; *Elecs. For Imaging*, 394 F.3d at 1347–48.

"Thus, in cases . . . with competing forum interests, the trial court needs to consider the "convenience factors" found in a transfer analysis under 28 U.S.C. § 1404(a)." *Micron Tech.*, 518 F.3d at 903–04. Uniform consideration of these factors "will reduce the incentives for a race to the courthouse because both

parties will realize that the case will be heard or transferred to the most convenient or suitable forum. *Id.* at 905.

28 U.S.C. Section 1404(a) provides that:

> For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division, where it might have been brought.

The criteria that courts utilize to determine whether to transfer an action under § 1404 include:  (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative means of the parties; (4) the locus of operative facts and relative ease of access to sources of proof; (5) the availability of process to compel the attendance of witnesses; (6) the weight accorded the plaintiff's choice of forum; (7) calendar congestion; (8) the desirability of having the case tried by the forum familiar with the substantive law to be applied; and (9) trial efficiency and how best to serve the interests of justice, based on an assessment of the totality of material circumstances.  *See D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106–07 (2d Cir. 2006); *Laumann Mfg. Corp. v. Castings USA, Inc.*, 913 F. Supp. 712, 720 (E.D.N.Y. 1996).

Here, the two actions are clearly duplicative and the first-filed rule applies.  Intema contends that no regard should be given to the earlier filed Massachusetts Action because the defendants, under the apparent threat of an adversary filing for infringement, engaged in negotiations with the plaintiff in bad

faith, forestalling the plaintiff's suit, in order to select a forum of their choice. The plaintiff states that this is a "classic example of an improper anticipatory filing" and that the defendants should be enjoined from prosecuting the Massachusetts Action.

Indeed, courts have recognized improper use of the Declaratory Judgment Act where parties have filed suit to improve their bargaining position in ongoing licensing negotiations, *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 810, 814 (Fed. Cir. 1996), overruled in part on other grounds, *MedImmune*, 549 U.S. 118, 127 S.Ct. 764, 166 L.Ed.2d 604, or to preempt an infringement suit and litigate in a more desirable forum, *Micron Tech.*, 518 F.3d at 904; *Alden Corp. v. Eazypower Corp.*, 294 F. Supp. 2d 233, 236 (D. Conn. 2003) (finding no "race to the courthouse" where patentee's letters, though strongly evidencing an intent to sue, did not specify a date or a forum, nor did they state that suit was inevitable); *see also Genentech*, 998 F.2d at 938 (noting that first-filed suits have sometimes been dismissed when forum shopping was the only motive for the filing, but finding that the declaratory judgment plaintiff had sound reasons for selecting the Southern District of Indiana where an Indiana company had been joined in the action and other related actions were already pending in Indiana).

However, the e-mail from Mr. Oliver to Mr. Rosenthal, which Intema relies upon to establish an inappropriate motive on defendants' part states only:

> I received your phone message from yesterday afternoon. I am booked today and through tomorrow morning, but I am open anytime tomorrow afternoon. Would you have a few minutes sometime tomorrow afternoon when I could give you a call?

(Pls. Exh. 4). From this the court cannot discern that PerkinElmer's representative was trying to forestall plaintiff's counsel and provide the appearance of continuing negotiations in order to gain a tactical litigation advantage. The two-week window allegedly requested by Mr. Oliver had lapsed without any further negotiation between the parties. In addition, the parties had previously conducted lengthy, protracted but unfruitful negotiations and Intema had asserted that it would "vigorously enforce the '103 patent against PerkinElmer and its NTD Laboratories subsidiary and seek damages for past infringement," without establishing any deadline. Under such circumstances, the defendants were not required to sit idle and wait for Intema to make the next move.

Further, as the home state of PerkinElmer, as well as the place where, according to the defendants, NTD operational decisions are made, it is clear that the defendants had sound reasons for filing their declaratory action in Massachusetts. Accordingly, the Court finds no evidence of improper forum shopping and gives full credit to the first-filed rule.

The applicable rules further require the Court to consider the remainder of the Section 1404 factors in determining which forum the action should proceed.

Intema seeks to have this action proceed in this District while the defendants move to have it transferred to the District of Massachusetts.

*(1) The convenience of the parties*

The plaintiff is a company based in Great Britain and concedes that Massachusetts is equally convenient as this District for its purposes. The defendant PerkinElmer is based in Massachusetts and seeks to have the action proceed there. The defendant NTD, the only entity based in this District, also seeks to have this action tried in Massachusetts. Accordingly, this factor favors transfer to the District of Massachusetts.

*(2) The convenience of the witnesses*

The plaintiff concedes that the witnesses regarding the invention itself, in particular Professor Wald, are located in Great Britain. However, the plaintiff alleges that the acts of direct infringement are believed to have occurred at NTD's Melville, New York location. The plaintiff contends that there must be managerial oversight at that facility and that such personnel will be in the best position to know exactly what type of testing is performed, how long any infringing test has been performed, how many such tests have been administered, and how much was charged for those tests.

On the other hand, the defendants contend that the majority of NTD employees at the Melville, New York location are non-managerial technicians

and are unlikely to be called as witnesses in this case. The defendants concede that two top executives in charge of NTD's operations reside outside of either district, Ms. Sundell, President of Genetic Screening, and Mr. Sherwin, Director of Laboratory Operations. The defendants contend, however, that Mr. Corbett, General Manager North American Genetic Screening is located in Massachusetts and will be a key witness in this case. In response, the plaintiff asserts that the defendants have failed to identify what direct knowledge Mr. Corbett will have regarding the day-to-day activities of NTD.

The Court considers this factor neutral because all of these witnesses are party witnesses employed by either the plaintiff or the defendants and are scattered throughout Great Britain, New York, and Massachusetts, among other places. *Mastercard Int'l Inc. v. Lexcel Solutions Inc.*, 03CV7157, 2004 U.S. Dist. LEXIS 10906, at *20 (S.D.N.Y. June 18, 2004) (finding convenience of the witnesses to be a neutral factor where most, if not all, witnesses would be employees of the parties).

*(3) The relative means of the parties*

The Court considers this factor neutral as well. Both parties are corporate entities and the expense to the plaintiff, a foreign concern, will be largely the same in this forum as in the District of Massachusetts.

*(4) The locus of operative facts and relative ease of access to sources of proof*

Documentation regarding the development of the patented invention by Professor Ward is likely to be in found Great Britain.  The plaintiff alleges that the acts of infringement occurred principally at the NTD Labs location in Melville, New York.  Further, the plaintiff contends that the most relevant documents are present in this District, including records regarding what tests were performed at that facility; how many were performed; under what conditions; and how much was charged for the tests.

The defendants assert that the complaint in this matter alleges that the defendants engaged in willful infringement, an accusation that implicates decisions made at PerkinElmer's corporate headquarters in Massachusetts.  The defendants contend that NTD conducts research, development, sales and testing in conjunction with other PerkinElmer entities located in Massachusetts and throughout the world.  Accordingly, the defendants contend that while PerkinElmer's activities are centered in Massachusetts, NTD's activities are divided between New York, Massachusetts and elsewhere.  Finally, the defendants contend that the largest volume of documents will be located at PerkinElmer's headquarters in Massachusetts.

The plaintiff counters that PerkinElmer acts through is subsidiaries in New York and Finland and that there is no evidence of relevant activities occurring in

14

Massachusetts.

Although, at this early juncture, it is difficult to say whether the testing records described by the plaintiff will be more important to this case than the corporate decision-related records described by the defendants, it is clear that both jurisdictions contain potentially important sources of proof. It is also unclear where the allegedly infringing product was developed. *Williams Advanced Materials, Inc. v. Target Tech. Co., LLC*, No. 03CV0276, 2007 U.S. Dist. LEXIS 56189, at*19 (W.D.N.Y. Aug. 1, 2007) ("In a patent infringement action, the locus of operative facts is where the research, design and development of the infringing product occurred."). However, as the infringing product is allegedly largely used at NTD's Melville, New York facility, this factor favors retention in this District.

*(5) The availability of process to compel the attendance of witnesses*

The parties are in agreement that this factor should be deemed neutral as the vast majority of witnesses will be employees of either the plaintiff or the defendants.

*(6) The weight accorded the plaintiff's choice of forum*

The plaintiff's choice of forum would ordinarily be accorded great weight, especially, where, it is also the locus of operative facts. However, that deference is reduced where the plaintiff's choice of forum is not its principal place of

business. *Williams*, 2007 U.S. Dist. LEXIS 56189, at *18–19. Further, where the first-filed rule applies and there are significant overlapping factual issues between the two pending cases, the choice of forum factor favors the district of the first-filed action. *Mastercard*, 2004 U.S. Dist. LEXIS 10906, *23–24

*(7) Calendar congestion*

The parties do not address this factor. However, the Court considers this factor to be neutral with respect to these two busy districts.

*(8) The desirability of having the case tried by the forum familiar with the substantive law to be applied*

The parties agree that this is a neutral factor as federal courts are presumed to have equal familiarity with federal patent law. *Mastercard*, 2004 U.S. Dist. LEXIS 10906, *24.

*(9) Trial efficiency and how best to serve the interests of justice, based on an assessment of the totality of material circumstances*

In light of the general preference for the first-filed action, the overlapping issues between this case and the Massachusetts Action, and the relatively equivalent convenience of either forum, especially with regard to the convenience of the witnesses, the court determines, on balance, that the Massachusetts action should proceed. Based on the totality of the circumstances, the plaintiff's motion to enjoin the defendants from proceeding with the Massachusetts action is denied

and the defendant's motion to transfer this case to the District of Massachusetts is granted.

### III.     CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that the plaintiff's motion to enjoin the defendants from proceeding in the Massachusetts Action is denied; and it is further

**ORDERED**, that the defendants' motion to transfer this case to the District of Massachusetts is granted; and it is further

**ORDERED**, the Clerk of the Court is directed to transfer this action to the District of Massachusetts as related to case number 09CV10176 and close the case.

**SO ORDERED.**
Dated: Central Islip, New York
September 12, 2009

　_/s/ Arthur D. Spatt_　
　ARTHUR D. SPATT
United States District Judge